SWAN v. MURPHY.

CANCELLATION OF INSTRUMENTS—LAND CONTRACT—FRAUD—ALTERA-
TION OF INSTRUMENTS—BROKERS.

In a suit by the vendor for the cancellation of a land con-
tract on the ground of fraud, where the brokers stopped
payment on a check given as part of the purchase price
to the amount claimed by them as commission, which
plaintiff never agreed to pay and to which they were not
entitled, as they were acting for the purchasers, but a
provision for the payment of which was inserted in plain-
tiff's copy of the contract, although she claimed it was not
in the original, a decree in favor of plaintiff was justified.[1]

Appeal from Wayne; Warner (Glenn E.), J., pre-
siding.   Submitted April 20, 1926.   (Docket No.
160.)   Decided July 22, 1926.

Bill by Elizabeth M. Swan against Michael J.
Murphy and John T. Murphy, copartners as Murphy
Bros., and another for the cancellation of a land con-
tract.   From a decree for plaintiff, defendants appeal.
Affirmed.

*Bishop, Kilpatrick & Weaver*, for plaintiff.

*Kelly, Kelly & Kelly*, for defendants.

BIRD, C. J.   The plaintiff, Elizabeth M. Swan, in
October, 1924, was the owner of a lot in the city of
Detroit, known as lot 237, Dexter Park subdivision.
In October, 1924, she was approached by defendants,
or their agents, who offered her $2,500 for it.   She
replied it was not for sale; that she had secured plans
for a house and paid $150 for them, and was going
to build thereon.   Subsequently another visit was
made, and she finally made a price of $3,000 for it.

[1]Cancellation of Instruments, 9 C. J. § 195.

Following this, for several months she was importuned on many occasions and offered various sums, less than the $3,000, but she refused all of them.      Finally, on March 25, 1925, defendants announced to her that they would pay her $3,000.      She assented to this and they gave her a check for $50, and an agreement was signed.      The matter drifted several weeks without anything being done.      She finally called the brokers and inquired when the deal would be closed.      They indicated that it would be closed at an early date. They called on May 5th and tendered her a check for $2,800.      She refused this, and had some talk with them concerning the commission of five per cent. they were trying to make her pay.      She told them the original contract did not contain the five per cent. provision, but that she found that her copy did.      After some discussion they yielded to her contention.      She demanded a certified check, but they induced her to accept the check for $2,800 and one for $145.      The advance payment of $50, and $5 for extension of abstract made up the amount of $3,000.      The check for $2,800 was honored, but payment was stopped on the check for $145.      She then began this suit, alleging fraud, and praying for a cancellation of the contract and for an injunction inhibiting the vendees from selling or mortgaging it.      Following this, the parties entered into a stipulation that $145 in cash should be deposited with the clerk of the court, and if she were successful in her suit it should be paid to her.      Upon execution of this stipulation the injunction was released, and the sole question to be submitted to the court was as to whom the $145 belonged.      The chancellor, after a hearing, found the plaintiff was entitled to the fund.

Plaintiff asserts with much positiveness that the original agreement did not contain the five per cent. provision.      The copy which was delivered to her did.

She did not see the copy prepared because she was at the time upstairs looking for the abstract.    Defendants insist that the original was the same as the copy. Both were written while the agents were at plaintiff's house, and while they do not claim that plaintiff ever agreed to pay the five per cent. commission, they lay much stress on the fact that she was familiar with the way in which real estate matters were conducted.

After reading the record we are inclined to accept plaintiff's version of the affair, and the following are some of the reasons which have brought us to that conclusion:

1. It is conceded that nothing was said by either party about commissions before, at the time, or immediately following the execution of the agreement.

2. It is agreed that plaintiff had consistently refused each time to accept less than $3,000, and some, if not all, of the previous offers by defendants had been made "net."

3. The fact that defendants paid her this $3,000 in checks in accordance with her contention.

4. The fact that plaintiff did not employ defendants as her brokers, nor did she ask them to dispose of her lot nor to act for her in any way.    They, came to her of their own accord.    Their interest was adverse to hers, they were acting for the church.    If they were faithful to their trust they were obligated to purchase the lot for the church as cheaply as they could and to pay plaintiff as little as they were obliged to.    This being so, why should they demand a commission from plaintiff for whom they had rendered no service?    The contention is illogical and commercially and legally unsound.

5. The conduct of defendants in paying in accordance with plaintiff's contention and thereby inducing her to believe the matter was settled, and then stopping payment of the check in the manner they did does

not tend to increase our confidence in their veracity. Under this view the conduct of defendants amounted to a fraud upon plaintiff and she is entitled to the relief prayed.

The decree of the trial court will be affirmed, with costs of both courts to plaintiff.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.